# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID RANDY TAYLOR, | ) |
| Plaintiff, | ) |
| | ) No. 17 C 9098 |
| v. | ) |
| | ) Magistrate Judge Susan E. Cox |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Randy Taylor ("Taylor") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Taylor filed a motion for summary judgment seeking reversal of the final decision of the Commissioner, and the Commissioner filed a summary judgment motion seeking an order affirming the decision. For the reasons set forth below, the ALJ's decision is affirmed. Taylor's motion for summary judgment (dkt. 22) is denied and the Commissioner's motion for summary judgment (dkt. 26) is granted.

## I. BACKGROUND

Taylor was born on May 17, 1954 and has a history of a fracture of his left non-dominant hand at age 17 and back pain. Taylor completed the 11th grade in 1971 and previously worked as a maintenance worker at a halfway house. On July 22, 2014, Taylor filed his claim for SSI, alleging that he became totally disabled on March 17, 2011 due to numbness in his left hand, arm, and fingers and back pain.

Under the standard five-step analysis used to evaluate disability, the ALJ found that Taylor had not engaged in substantial gainful activity since his application date of July 22, 2014 (step one) and his status post fracture of his non-dominant left upper extremity was a severe impairment (step

two). (R. 65). The ALJ also found that Taylor's back pain was a non-severe impairment. *Id.* The ALJ determined that Taylor's fracture of his left upper extremity and disorder of the spine did not met or medically equal a listed impairment (step three). *Id.* at 65-66. The ALJ then concluded that Taylor retained the residual functional capacity ("RFC") to perform medium work (*i.e.*, "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" and "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."), *see* 20 C.F.R. § 416.967(c), except that he was limited to only frequent climbing of ramps or stairs; occasional climbing of ladders, ropes, and scaffolds; occasional crawling; and occasional fingering with the non-dominant left hand. *Id.* at 66-70.

Given this RFC, the ALJ concluded that Taylor was unable to perform his past relevant work as a maintenance worker. *Id.* at 70. At step five, the ALJ found that Taylor could perform other jobs that exist in significant numbers in the national economy, such as dining room attendant, hospital food service worker, and kitchen helper. *Id.* at. 70-71. The Appeals Council denied Taylor's request for review on October 17, 2017. *Id.* at 1-6. Taylor now seeks judicial review of the final administrative decision of the Commissioner, which is the ALJ's decision. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

## II.  DISCUSSION

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former

2

occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 416.920(a) (2012); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 416.920(a) (2012). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, at n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, an ALJ's credibility determination should be upheld "unless it is patently wrong." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ denied Taylor's claim at step five of the sequential evaluation process, finding that Taylor retains the residual functional capacity to perform a significant number of unskilled medium jobs in the national economy. Taylor challenges the ALJ's decision on three main grounds: (1) the ALJ's RFC determination is not supported by substantial evidence in the record; (2) the ALJ impermissibly cherry-picked the medical evidence during her RFC assessment; and (3) the ALJ improperly assessed Taylor's daily activities and work history when considering his subjective symptoms. The Court addresses each of these arguments in turn.

**A.    The ALJ's RFC Determination**

Taylor contends that the ALJ's RFC determination with respect to his physical limitations is unsupported by substantial evidence. "The RFC is an assessment of what work-related activities the

3

claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (stating "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The ALJ's RFC assessment must incorporate all of the claimant's limitations which she finds are supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Similarly, "[t]he ALJ is only required to incorporate into her hypotheticals those impairments and limitations that she accepts as credible" and that are supported by the medical record. *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

The ALJ asked the vocational expert ("VE) three hypothetical questions that pertained to Taylor's ability to work. Taylor argues that the VE's testimony in response to the first hypothetical, which the ALJ ultimately relied on, did not include all limitations supported by the medical evidence. The ALJ's first hypothetical inquired whether there were any jobs available for a person "limited to occasional fingering with the non-dominant left hand." (R. 34). The ALJ's first hypothetical question incorporated all of the limitations included in the ALJ's assessment of Taylor's RFC. Thus, Taylor's real challenge is whether the ALJ should have included additional restrictions in the RFC finding, and thus, whether substantial evidence supports the RFC limitations. Taylor contends that the second and third hypotheticals which included limitations of no use of the left hand and unable to work twice a week for an hour due to back pain, respectively, more accurately reflect his limitations and RFC. The Court disagrees.

The RFC and corresponding first hypothetical question to the VE fully accounted for Taylor's limitations relating to his left hand impairment and back pain. The ALJ limited Taylor to a reduced range of medium work with frequent climbing of ramps or stairs; occasional climbing of ladders, ropes, and scaffolds; occasional crawling; and occasional fingering with the non-dominant left hand.

Taylor contends that the RFC fails to adequately capture limitations associated with his "severely impaired left hand and recurring back pain." (Dkt. 22 at 6). Taylor testified that he can only lift a 12-ounce can with his left hand and that he experiences back pain twice a week, which requires him to take Advil and lay down for 30 to 40 minutes to relieve his pain. (R. 29-31, 67). Taylor also indicated that he had problems with lifting, squatting, bending, reaching, stairs, and using his hands because his left hand fingers go numb and his back pain. *Id.* at 197. Finally, Taylor asserts that he would have to do certain activities identified in the RFC "one-handedly." (Dkt. 22 at 6).

As the ALJ pointed out in discussing Taylor's RFC, the only medical evidence in this case consisted of reports from two consultative examiners, an opinion from a state agency medical physician at the reconsideration level, and x-rays of Taylor's lumbosacral spine and left hand. (R. 68-70). The record contains no treatment records. The ALJ assessed the results of the first consultative examination by Rochelle Hawkins, M.D., on September 10, 2010, which showed a generally normal bilateral upper extremity exam and normal bilateral lower extremity exam. *Id.* at 68, 234. On examination, Dr. Hawkins noted no evidence of any anatomic abnormality of either the upper or lower extremity except Taylor's left index finger showed minimal flexion as well as a well-healed scar on the left wrist from a previous laceration and status post tendon repair. *Id.* Dr. Hawkins found no evidence of redness, warmth, thickening or effusion of any upper or lower extremity joint, no limitations of motion of shoulder, elbow, or wrist joints, grip strength strong at 5/5 and equal bilaterally, ability to perform fine and gross manipulation intact, no cyanosis, clubbing or edema in his extremities, muscle strength normal at 5/5 in bilateral upper and lower extremities, ankles, knees, and hips had full range of motion, straight leg raising to 90 degrees bilaterally in sitting and supine positions, and capillary refill was immediate. *Id.* The ALJ cited Taylor's generally normal neurological examination except for his report of decreased sensation in his left hand. *Id.*

The ALJ pointed out that Dr. Hawkins found no anatomic abnormality of the cervical, thoracic or lumbar spine and no limitation of motion of any spinal segment, although Taylor

5

complained of pain on full flexion. *Id.* at 68, 235. The ALJ further noted that Taylor exhibited normal gait, did not use an assistive device, and was able to walk greater than fifty feet unassisted. *Id.* The ALJ added that Taylor showed no difficulty getting on/off the examination table, tandem walking, walking on toes/heels, squatting and arising, hopping on one leg, and did not need or use an assistive device. *Id.* at 68-69, 234. Dr. Hawkins observed that Taylor had no difficulty with either hand opening a door using a knob, squeezing a blood pressure cuff blub, picking up a coin, picking up and holding a cup, picking up a pen, buttoning and unbuttoning, zipping and unzipping, tying shoelaces, or turning pages, and had no weakness in either hand. *Id.* at 239. Dr. Hawkins' diagnostic impressions were left hand-index finger-status post trauma when Taylor was 17 years old and chronic back pain with a negative examination. *Id.* at 69, 235. Dr. Hawkins opined that Taylor was able to sit, stand, walk, lift, carry, speak and hear without difficulty. *Id.* The ALJ gave great weight to Dr. Hawkins' assessment. *Id.* at 69.

The ALJ also considered the x-rays of Taylor's lumbosacral spine and left hand dated September 14, 2010. *Id.* at 68, 241-42. The x-ray of Taylor's lumbosacral spine showed only mild degenerative arthritic changes with no evidence of fracture or dislocation. *Id.* at 68, 241. The intervertebral disc spaces were fairly well maintained, and the pedicles were intact. *Id.* The ALJ reviewed the results of the x-ray of Taylor's left hand, which showed no evidence of bone or joint abnormality. *Id.* at 68, 242.

The ALJ then discussed the largely normal results of the consultative examination by Liana G. Palacci, D.O., performed on October 14, 2014. The only abnormality noted by Dr. Palacci was that Taylor was unable to fully flex his left index finger and had a U-shaped scar on the palmar side of the left index finger consistent with a previous surgery. *Id.* at 69, 246. The physical examination showed no clubbing, cyanosis or edema of the extremities, normal grip strength, could make fists and oppose fingers, normal range of motion of the shoulders, elbows, wrists, hips, knees, ankles, cervical spine, and lumbar spine, able to heel-and-toe stand, could perform knee squats, gait was non-antalgic without the use of assistive devices, and straight leg raise test was negative. *Id.* The ALJ noted the normal

6

neurological examination results: no focal deficits, cerebellar testing negative, cranial nerves intact, Romberg test negative, able to produce sustained, audible, and understandable speech, reflexes present, equal, and symmetric, no loss of sensation, strength 5/5 in the bilateral upper and lower extremities. *Id.* Dr. Palacci observed that Taylor had no difficulty with either hand opening a door using a knob, squeezing a blood pressure cuff blub, picking up a coin, picking up a pen, buttoning and unbuttoning, zipping and unzipping, or tying shoelaces. *Id.* at 248. Dr. Palacci's clinical impression was history of left index finger injury with limited flexion of the affected digit. *Id.* at 69, 247. In reaching her RFC determination, the ALJ gave great weight to Dr. Palacci's assessment. *Id.* at 72.

The ALJ gave some weight to the November 11, 2014 opinion of the non-examining state agency physician, Dr. Douglas Chang, who determined at the reconsideration level that Taylor could perform medium exertional work with postural limitations of frequent climbing ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, and crawling and a manipulative limitation of frequent fingering on the left hand. *Id.* at 54-56, 70. The ALJ found that Dr. Chang's opinion was "generally consistent with the medical record." *Id.* at 70. However, the ALJ noted that she did not include a limitation on balancing, stooping, kneeling, and crouching in the RFC because there is not "any supportive evidence in relation to the assessed degree of [these] postural limitations." *Id.* The ALJ also found that Taylor was more limited in his ability to climb ladders, ropes, or scaffolds and crawl than Dr. Chang. *Id.* at 55, 66. The RFC formulated by the ALJ was also more restrictive with respect to Taylor's left hand than that suggested by Dr. Chang, which found frequent fingering with the left hand. *Id.* at 56, 66.

Based on the foregoing, which represents the entirety of the medical evidence of record, the Court finds no error in the ALJ's decision not to include an RFC limitation of no use of the left hand and an inability to work for an hour twice a week due to back pain. There is no evidence in the record supporting Taylor's assertion that he could not use his left hand. The medical evidence demonstrates that Taylor had full strength in both arms, full grip strength in both hands, and no fine or gross motor

7

deficiencies. *Id.* at 234, 239, 246, 248. The ALJ accommodated Taylor's left-hand impairment by specifying that Taylor is limited to occasional fingering with his non-dominant left hand, despite Dr. Chang's opinion that Taylor could frequently finger with his left hand and the reports from Drs. Hawkins and Palacci that Taylor had no functional limitations related to his left hand. The ALJ's RFC also accommodates Taylor's back pain by limiting Taylor to frequent climbing of ramps or stairs, occasional climbing of ladders, ropes, or scaffolds, and occasional crawling. No objective medical evidence supports a more limited RFC than that provided by the ALJ, and Taylor fails to point to any medical evidence suggesting he is more limited than the ALJ found him to be. Because the ALJ formulated an RFC that adequately accounts for all the limitations supported by the record, the ALJ's RFC assessment is supported by substantial evidence.

Taylor argues that in reaching her RFC assessment, the ALJ improperly cherry-picked evidence from the two consultative examinations that was irrelevant to his left-hand impairment and back pain, while "ignoring other, often more pertinent, details." (Dkt. 22 at 5). "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

The irrelevant details of Dr. Hawkins' exam that Taylor argues the ALJ improperly focused on include that Taylor "showed no difficulty performing any physical maneuver tests, including getting on/off the examination table, tandem wal[k]ing, walking on toes/heels, squatting and arising, and hopping on one leg." (Dkt. 22 at 9). Taylor also contends that the ALJ "focused on similar findings of questionable relevance" by Dr. Palacci, such as the range of motion of the hips, knees and ankles was normal, the ability to heel-and-toe stand and perform leg knee squats, and straight leg raise test was negative. *Id.* Taylor contends that these findings are "unrelated to [his] hand or back." *Id.*

Contrary to Taylor's argument, the ALJ did not cherry pick evidence in determining the RFC but thoroughly discussed the limited evidence of record. First, Taylor has failed to cite any specific

8

evidence regarding his ability to function with his left hand that the ALJ allegedly ignored or failed to consider that supported Taylor's position. Second, many of the ALJ's findings highlighted by Taylor are relevant to Taylor's allegations of back pain, which the ALJ was required to evaluate when assessing his RFC despite her finding that his back impairment was non-severe. *Denton*, 596 F.3d at 423 (holding "[w]hen determination a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."). The ALJ did not cherry pick the medical records to support her RFC assessment. Instead, the limited medical evidence concerning Taylor's left hand and back condition reflected full strength and no significant functional limitations, and the ALJ reasonably determined that Taylor could perform a reduced range of medium work.[1]

**B.     The ALJ's Subjective Symptom Evaluation**

Taylor argues that the ALJ's credibility determination discounting the severity of her subjective symptoms was patently wrong because it improperly relied on his work history and failed to explain how his daily activities undermined his alleged symptoms and functional limitations. The ALJ acknowledged Taylor's claim that he was disabled due to left hand, arm, and finger numbness. (R. 67). The ALJ found Taylor's allegations, which included that he could not lift more than 12 ounces with his left hand, not entirely consistent with the minimal evidence of objective abnormalities, diagnoses,

---

[1]     In his reply brief, Taylor contends for the first time that the ALJ improperly "played doctor" by evaluating the two "dated" consultative examinations without relying on input from an expert. This argument is waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011) ("it is well-established that arguments raised for the first time in the reply brief are waived."). Even if not waived, Taylor's argument is not persuasive. The ALJ did not play doctor or substitute her opinion for that of an expert in reaching her decision as she generally relied on the findings from the state agency physician, Dr. Chang. (R. 70). Dr. Chang reviewed both consultative examination reports prior to completing his assessment, and his opinion supports the ALJ's determination that Taylor could perform a reduced range of medium exertional work. (R. 51, 53). The ALJ reasonably relied on the uncontradicted report by Dr. Chang. *Flener v. Barnhart*, 361 F.3d 442, 447-48 (7th Cir. 2004) (stating "[i]t is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation."). While it is true that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion," there is no medical evidence post-dating Dr. Chang's review, let alone new and significant medical evidence that could have affected Dr. Chang's assessment. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). The Court finds no error in the ALJ's failure to obtain an updated medical assessment.

9

or treatment, his effective treatment of pain symptoms with over-the-counter medications, his activities of daily living, and his poor work history prior to the alleged date of disability. *Id.* at 67-68.

When evaluating a claimant's subjective symptoms, the ALJ should consider a number of factors, such as "objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). This Court will uphold the ALJ's subjective symptom evaluation if the ALJ gives specific reasons for the finding that are supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's subjective symptom analysis need not be "flawless;" it just need not be "patently wrong." *Simila*, 573 F.3d at 517. The Court finds that the ALJ's evaluation of Taylor's subjective symptoms is supported by substantial evidence and is not patently wrong.

The ALJ discounted Taylor's subjective symptoms by properly relying in part on the lack of objective medical evidence. The ALJ discussed the two consultative examinations which both revealed full grip strength, full strength in both upper extremities, and no problems with fine or gross manipulation. (R. 68-69). Both consultative examiners noted some limitation in Taylor's flexion of his left index finger, but neither examination revealed any functional limitation resulting from that lack of flexion. *Id.* at 234, 239, 246, 248. The ALJ also noted that the x-ray of Taylor's left hand showed no abnormalities and the x-ray of his lumbosacral spine showed only mild degenerative arthritic changes. *Id.* at 68, 241-42.

The ALJ also properly considered Taylor's earnings records and poor work history prior to the alleged onset of his disability as undermining his credibility. A claimant's work history is a relevant factor in evaluating claimant's subjective symptoms. *See* 20 C.F.R. § 416.929(c)(3) (in evaluating subjective symptoms, the ALJ "will consider all of the evidence presented, including information about your prior work record"). Because "[a]n ALJ is entitled to cite a poor work history to cast doubt on allegations that a claimant cannot work full time," the ALJ did not err by relying on Taylor's lack

10

of significant work history even before his disability allegedly began. *Akel v. Colvin*, 2016 WL 7232559, at *2 (N.D. Ill. Jan. 8, 2016); *see also Simila*, 573 F.3d at 520 (7th Cir. 2009) (upholding ALJ's finding that claimant's declining earnings prior to the onset of his alleged disability showed a lack of effort to find work and undermined his credibility).

Taylor argues that the ALJ failed to explain how his ability to complete several daily activities undermines his claim that his left hand is severely impaired. Taylor testified that his "biggest problem" is his left hand. (R. 33). He stated that he experiences left hand pain and numbness and cannot bend his left index finger. *Id.* at 26, 28-29. Taylor testified that he can only lift a 12 ounce can with his left hand. *Id.* at 29. When he has left hand pain, he "can't really pick anything up with [his] left hand." *Id.* at 28. Taylor also stated that he experiences back pain once or twice a week which requires him to lay down for 30 to 40 minutes and that he treats his back pain with Advil. *Id.* at 31. The ALJ considered Taylor's daily activities, noting that Taylor can button clothes with his left hand, prepare his own meals on a daily basis, do the laundry and ironing once in a while, go grocery and clothes shopping, perform all of his personal care activities, spend time with others, go for walks, and take out the garbage. *Id.* at 29, 32-33, 67, 193-96. Taylor also reported that he goes outside "all the time" and is able to drive and take public transportation. *Id.* at 195. The ALJ concluded that Taylor's reported level of daily activities failed to support the "alleged severity of symptoms and functional limitations." *Id.* at 68.

An ALJ may consider a claimant's daily activities when evaluating a claimant's subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *7 (March 16, 2016); *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (stating "[a]n ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."). The ALJ properly considered Taylor's description of his daily activities in assessing whether his testimony about the effects of his left hand impairment and back condition were credible or exaggerated. Although the ALJ could have more specifically explained how Taylor's daily activities were inconsistent with his subjective allegations, Taylor's daily activities can be fairly

11

construed as inconsistent with his claim of a disabling left-hand impairment. *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013) (holding that "the ALJ could have been more specific as to which physical and mental impairments and symptoms he thought were exaggerated…[but] [t]he ALJ's explanation was sufficient to reasonably conclude that Pepper exaggerated the effects of her impairments."). Moreover, the ALJ did not completely discount Taylor's allegations regarding his left hand limitations and pain. The ALJ's decision to limit Taylor to a reduced range of medium work with only occasional fingering with the non-dominant left hand (up to one third of the work day) is evidence that the ALJ considered Taylor's testimony regarding his subjective symptoms that was unsupported by the objective medical record. *Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007) (noting "the ALJ did not totally discount [plaintiff's] testimony regarding how her pain affected her ability to perform certain activities, as evidenced by the ALJ's decision to limit [plaintiff's] range of work to sedentary when assessing her residual functional capacity.").

In addition to Taylor's daily activities, the ALJ specified several other valid reasons for finding Taylor's symptom allegations not entirely credible. *Halsell v. Astrue*, 357 Fed. Appx. 717, 722-23 (7th Cir. 2009) (emphasizing that "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are[.]") (emphasis in original). The ALJ explained that the "medical record consists of only consultative examinations, and clinical evaluations and diagnostic imaging studies showed only a few objective medical abnormalities with lesser severity of symptoms than as alleged by the claimant." (R. 68). The ALJ observed that the two "consultative examination[s] showed no significant abnormalities beyond reduced range of motion of the left index finger." *Id.* at 70. The ALJ also noted that Taylor only takes over-the-counter medications to treat his left-hand pain and back pain. *Id.* at 31, 68, 232. Taylor's reliance on over-the-counter medications allowed the ALJ to properly infer that Taylor's pain is not as severe as alleged. *Simpson v. Barnhart*, 91 Fed. Appx. 503, 507 (7th Cir. 2004) (holding "[t]he ALJ was free to infer that Simpson's pain was not severe because he was never prescribed pain medication and testified that he was able to control his pain symptoms by taking Tylenol."); *Donahue v. Barnhart*, 279

F.3d 441, 444 (7th Cir. 2002) (stating "[t]hen the ALJ noted that Donahue relied for pain control on over-the-counter analgesics and reported that that these gave him good relief, from which the ALJ inferred that the level of pain could not be severe."). The ALJ further observed that Taylor had a poor work history even prior to his alleged date of disability. (R. 68). Because there exist additional reasons supported by the record for the ALJ's adverse subjective symptom finding beyond daily activities, the determination is not patently wrong.

### III. CONCLUSION

For the reasons and to the extent stated above, the ALJ's decision is affirmed. Plaintiff's Motion to Reverse the Commissioner of Social Security (dkt. 22) is denied, and the Commissioner's Motion for Summary Judgment (dkt. 26) is granted. The Clerk is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff David Randy Taylor.

Entered: 10/22/2018

_____
U.S. Magistrate Judge, Susan E. Cox